(17 Misc. Rep. 28.)

## PERRY v. PERRY.

(Supreme Court, Special Term, New York County. May, 1896.)

DIVORCE—CUSTODY OF CHILDREN—MODIFICATION OF DECREE.

Under Code Civ. Proc. § 1771, as amended by Laws 1895, c. 891, § 2, authorizing the court, on the application of either party, to annul, vary, or modify the provision as to the custody of children contained in a decree of divorce on the ground of the wife's adultery may be modified so as to permit her to visit the children.

Action by Sebert C. Perry against Frances E. Perry for divorce. A decree was granted in favor of plaintiff, and defendant now moves to modify the same. Granted.

Wm. O. Campbell, for plaintiff.
Philip Carpenter, for defendant.

PRYOR, J.    The petitioner, against whom a divorce has been obtained on the ground of adultery, solicits the privilege of visiting her children, now in the custody of their paternal grandmother. They are of the age of four and five years; the younger a girl, the elder a boy.    As the statute stood before 1895, a final decree of divorce was not susceptible of modification, and its directions as to the custody of children were unalterable.    But in June of that year, by amendment of the Code, the court is empowered, on the application "of either party, to annul, vary or modify such direction." [1] This change in the provisions of the law involves a change in its policy, implying that, after a sentence of divorce, circumstances may require a different disposition of the offspring of the parties.    Nay, more, the implication of the enactment is that the defeated spouse, from whom, by the decree, the children have been taken, may present a case which, in the discretion of the court, would entitle him or her to their custody and control.    No distinction is indicated between the claims of husband and wife, but "either party" may make application for the children.    It is the settled law of this state that, in determining the custody of infants between father and mother, their welfare, and not the supposed rights of the parents, is the controlling principle.    Nor, in the competition, does the father start with any superior title; for, whatever was the notion in former times and other jurisdictions, at this day and in this country the claim of the mother to her offspring is, at least, of equal potency. "By the law of nature, the father has no paramount right to the custody of his child.    *    *    *    All other things being equal, the mother is the most proper person to be intrusted with the care of a child of this tender age.    The law of nature has given her an attachment for her infant offspring which no other relative will be likely to possess in an equal degree."    Mercein v. People, 25 Wend. 103, 106.

It is urged, however, that, by her adultery and marriage with the paramour, this mother is demonstrated an unfit companion of her children.    If her sin were incapable of atonement and her life of reformation, the objection would be insuperable.    But in the statute of 1879 (chapter 321) we have legislative recognition of the fact, familiar in human experience, that an erring spouse may return to the path of virtue, and recover the qualities requisite to the nurture of children.

Upon the proofs, the conclusion is clear that the petitioner has retrieved her character; that her conduct is now blameless; that her present life is the life of a chaste and exemplary matron.    It is not in the interest of society that a lapse from virtue should involve an irredeemable infamy, but, rather, that moral amendment should be encouraged by every inducement.    Surely, the signal reformation shown by the petitioner deserves the reward of an occasional visit to her infant offspring.    Perpetual banishment from their presence—an indelible mark of disgrace—tends to render her desperate of a good repute.    Association with them will fortify and

[1] Laws 1895, c. 891, § 2, amending Code Civ. Proc. § 1771.

confirm her in the resolution for a better life. What harm can come to these children from an interview with this mother? Is it to be imagined that, even if wicked herself, she would seize the opportunity to debauch their artless innocence? But she is now of irreproachable conduct and conversation, and we may be sure that her influence over them will be exerted rather to divert them from the ways that led to her own ruin. The husband says he has persuaded the children that their mother is dead, and he objects to their being disabused of the deception. I should rather think it a kindness to them to be relieved of the sense of orphanage by the embraces and ministrations of a caressing mother. Indulgence of the filial instinct is not only a source of happiness, but is the spring as well of the finest social virtues,—obedience, love, sympathy, and reverence. Whether, therefore, we regard the interests of the children, the mother, or of society, it is equally evident that the petition should be granted.